UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>    v.<br><br>NELSON MAURICIO PONCE VASQUEZ,<br><br>           Defendant. | CR. NO. 2:11-101 WBS<br><br>MEMORANDUM AND ORDER RE:<br>MOTION FOR RECONSIDERATION |

----oo0oo----

On April 11, 2014, the court granted defendant Nelson Mauricio Ponce Vasquez's motion to dismiss the Indictment based on a violation of his Sixth Amendment right to a speedy trial. The government now seeks reconsideration of that Order based on new evidence and clear error of law.

"No precise 'rule' governs the district court's inherent power to grant or deny a motion to reconsider a prior ruling in a criminal proceeding." United States v. Lopez-Cruz, 730 F.3d 803, 811 (9th Cir. 2013); see United States v. Healy, 376 U.S. 75, 78 (1964) (recognizing "the appropriateness of

1

petitions for rehearing by the United States in criminal cases"). In assessing motions for reconsideration in criminal cases, some courts have relied on the standard that governs motions for reconsideration under Federal Rule of Civil Procedure 59. See, e.g., United States v. Sims, 252 F. Supp. 2d 1255, 1261 (D.N.M. 2003); see also Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993) ("Reconsideration [under Rule 59] is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."); cf. Lopez-Cruz, 730 F.3d at 811 (discussing case in which the Ninth Circuit affirmed "denial of a motion for reconsideration of a suppression order because the new evidence 'could readily have been presented at the original hearing on the motion to suppress' and because the defendant offered no excuse for the failure to do so").

Here, the government seeks reconsideration of the court's April 11, 2014 Order based on: (1) new evidence from co-defendant Dionisio Robles Padilla's plea colloquy; and (2) the court's alleged error of law in referring to the presumption of innocence when assessing defendant's claim of actual prejudice.

1. New Evidence

On April 21, 2014, co-defendant Padilla pled guilty to one count of distribution of methamphetamine. During the plea colloquy, the court asked Padilla whom he contacted to obtain the methamphetamine and Padilla eventually said he called defendant at a phone number defendant had left on a purchase order. (Apr. 21, 2014 Tr. at 23:6-9.) The government argues that this new

1  evidence merits reconsideration of the court's prior order
2  because Padilla's testimony confirms that he contacted defendant
3  to order the methamphetamine and the destroyed Comcast phone
4  records would therefore only have incriminated defendant.

5          To provide defendant's counsel with an opportunity to
6  cross-examine Padilla and present any evidence, the court set the
7  matter for an evidentiary hearing and ordered the government to
8  produce Padilla as a witness.  (Docket No. 132.)  Shortly before
9  the scheduled hearing, Padilla's counsel filed a statement
10 indicating that Padilla intends to his assert his Fifth Amendment
11 right against self-incrimination and will not testify at the
12 hearing or trial.  (Docket No. 135.)  The court seriously doubts
13 that it may consider Padilla's statements for purposes of this
14 motion because they were made outside the presence of defendant
15 and his counsel, see generally Crawford v. Washington, 541 U.S.
16 36, 50-62 (2004) (discussing the Confrontation Clause of the
17 Sixth Amendment), and would be inadmissible hearsay at trial, see
18 generally United States v. Duenas, 691 F.3d 1070, 1086-90 (9th
19 Cir. 2012) (discussing the former testimony exception in Federal
20 Rule of Evidence 804).

21         Nonetheless, assuming the court can consider Padilla's
22 statement made during the plea colloquy in deciding this motion,[1]

---

[1] The court is not aware of and neither party cited any authority addressing whether the court can consider evidence that would be inadmissible at trial when deciding a motion to dismiss the indictment based on a Sixth Amendment speedy trial violation. Notwithstanding that the inquiry raised by a motion to suppress is distinct from the inquiry at issue here because a motion to suppress addresses the admissibility of evidence, the government argues by analogy that the court can consider evidence that would be inadmissible at trial because it can consider such

the court would have to determine how much weight to give to that statement. In order to determine the weight to assign to any evidence, the trier of fact must take into account a number of factors. See Ninth Circuit Model Criminal Jury Instruction No. 3.9 (instructing the jury that it "may believe everything a witness says, or part of it, or none of it" and should make that determination based on numerous factors, including "the reasonableness of the witness's testimony in light of all the evidence"). Such determinations are traditionally made through the adversary process. It is only with the benefit of cross-examination and the defendant's "'opportunity to present his own side of the case,'" that the adversary process is "'trusted to sort out the reliable from the unreliable evidence.'" United States v. Berry, 624 F.3d 1031, 1040 (9th Cir. 2010) (quoting Barefoot v. Estelle, 463 U.S. 880, 899 (1983), superseded by statute on other grounds, 28 U.S.C. § 2253(c)(2)).

---

inadmissible evidence when deciding a motion to suppress. See United States v. Raddatz, 447 U.S. 667, 679 (1980) ("At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." (citations omitted)); United States v. Hong, 433 Fed. App'x 541, 543 (9th Cir. 2011) ("[T]he concerns underlying the rules of evidence are greatly reduced in the context of a suppression hearing before a judge, rather than a trial before a jury."). Although the court has serious doubts about the propriety of considering Padilla's testimony from the plea colloquy, it need not resolve the issue because it ultimately finds that the testimony cannot be given any weight. See United States v. Matlock, 415 U.S. 164, 175 (explaining that, when the court is considering evidence that would be inadmissible at trial for purposes of a pretrial motion, "the judge should receive the evidence and give it such weight as his judgment and experience counsel").

Without the defendant being accorded the opportunity to cross-examine Padilla or to present other evidence to contradict or impeach his testimony, the court simply cannot assess the truthfulness of Padilla's testimony from the plea colloquy. If the court had to determine the weight to give to Padilla's testimony based only on the limited evidence before it, the court would have to find such ex parte statement to lack sufficient credibility to merit consideration here.[2] Accordingly, the court will deny the government's motion for reconsideration based on new evidence.

2. Clear Error of Law

In its Order granting defendant's motion to dismiss the Indictment, the court stated:

> Of course, if defendant is in fact guilty, it could be argued that it is speculative to assume that he would

---

[2] Not only did defendant lack the opportunity to cross-examine Padilla, but the court observed Padilla testify during the plea colloquy and was not convinced that his testimony was credible. For example, Padilla seemed to struggle with recalling defendant's name, referring to him initially as "[t]he guy that was here in court with me three weeks ago." (Apr. 21, 2014 Tr. at 22:16-17.) It is also undisputed that defendant was not the one who delivered the methamphetamine for the second controlled purchase on August 31, 2010, and the government was unable to identify the person who did. Given that at least one person who has delivered methamphetamine to Padilla in August 2010 remains unknown, it is possible, if not likely, that the same individual delivered the methamphetamine on August 18, 2010 and that Padilla is protecting that person. If Padilla testified at a hearing or at trial, defendant's counsel could of course cross-examine him on such issues and the court or jury would be able to determine the appropriate weight to give his testimony. See Sedaghaty, 728 F.3d at 902 ("'[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.'" (quoting Davis v. Alaska, 415 U.S. 308, 316-17 (1974) (alteration in original))).

5

>   benefit from identifying that telephone number. Although defendant has presented evidence that his cell phone did not receive a call from the (707)-line on the date in question, the number called could have belonged to someone else associated with him. But in assessing the relevance of that information, the court, consistent with the presumption of innocence, must assume the defendant is innocent. Making that assumption, identifying the phone number Padilla called would be of substantial value to defendant's defense, because it would enable him to ultimately show that he is not connected with the number or person Padilla called to order the methamphetamine and thus that he did not deliver the drugs.

(Apr. 11, 2014 Order at 11:7-20.)  The government contends that the presumption of innocence is relevant only at trial and cannot be considered for purposes of a pretrial motion; therefore, it argues, the court's reliance on the presumption of innocence constitutes clear error and merits reconsideration.

In <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979), pretrial detainees challenged the constitutionality of certain conditions of confinement and the Supreme Court stated that the presumption of innocence "has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun."  441 U.S. at 533.  The Court explained:

>   The presumption of innocence is a doctrine that allocates the burden of proof in criminal trials; it also may serve as an admonishment to the jury to judge an accused's guilt or innocence solely on the evidence adduced at trial and not on the basis of suspicions that may arise from the fact of his arrest, indictment, or custody, or from other matters not introduced as proof at trial.

<u>Id.</u>

One year before <u>Bell</u>, the Ninth Circuit specifically

6

recognized the relevance of the presumption of innocence in the context of the right to a speedy trial.  See Tucker v. Wolff, 581 F.2d 235, 237 (9th Cir. 1978) ("The right to a speedy trial is the right of an accused, who is presumed to be innocent, not of a convict."); cf. Heiser v. Ryan, 15 F.3d 299, 305 (3d Cir. 1994) ("[T]he presumption of innocence, which underlies the societal concerns expressed in the Speedy Trial Clause, can no longer apply once the defendant has been found, or pleads, guilty."). The parties have not cited and this court is not aware of a post-Bell Ninth Circuit case addressing the application of the presumption of innocence to a defendant's motion to dismiss the indictment based on a Sixth Amendment speedy trial violation.

Nonetheless, the Ninth Circuit has not interpreted Bell as rendering the presumption of innocence irrelevant at every stage of criminal proceedings prior to trial.  For example, in United States v. Scott, 450 F.3d 863 (9th Cir. 2006), a defendant successfully challenged the reasonableness of warrantless searches as a condition of his pre-trial release.  In reaching this conclusion, the Ninth Circuit distinguished "between someone who has been convicted of a crime and someone who has been merely accused of a crime but is still presumed innocent." Id. at 873. The court further explained:

> [T]he assumption that Scott was more likely to commit crimes than other members of the public, without an individualized determination to that effect, is contradicted by the presumption of innocence . . . . Defendant is, after all, constitutionally presumed to be innocent pending trial, and innocence can only raise an inference of innocence, not of guilt.

Id. at 874 (emphasis added).

7

Notwithstanding how some might want to interpret the Supreme Court's language and holding in Bell, the presumption of innocence remains more than a mere procedural formality; it stands as one of the fundamental precepts of the American criminal justice system.  From Scott and other cases, it is clear that the Ninth Circuit has not read Bell to render the presumption of innocence meaningless until the first day of trial.  See id.; Jonah R. v. Carmona, 446 F.3d 1000, 1010 (9th Cir. 2006) ("[I]f a person is detained in a pretrial setting, while enjoying the presumption of innocence, it is only fair that the government give him credit for that time at the end of his sentence." (internal quotation marks omitted) (alteration in original)); United States v. Ripinsky, 20 F.3d 359, 365 (9th Cir. 1994) ("In asking us to authorize the pretrial restraint of substitute assets, the government asks us to grant them an even more powerful weapon, a weapon available against the accused, indeed, the presumed innocent."); Seattle Times Co. v. U.S. Dist. Court for W. Dist. of Wash., 845 F.2d 1513, 1517 (9th Cir. 1988) ("The decision to hold a person presumed innocent of any crime without bail is one of major importance to the administration of justice.");  United States v. Motamedi, 767 F.2d 1403, 1407 (9th Cir. 1985) ("[W]e are not unmindful of the presumption of innocence and its corollary that the right to bail should be denied only for the strongest of reasons."); accord United States v. Mitchell, 652 F.3d 387, 422 (3d Cir. 2011) ("The Government's interests in this case are limited by the fact that, unlike convicts, arrestees and pretrial detainees are entitled to a presumption of innocence."); 18 U.S.C. § 3142(j) (Bail Reform

1  Act) ("Nothing in this section shall be construed as modifying or
2  limiting the presumption of innocence.").

3          The government relies heavily on United States v.
4  Koskotas, 888 F.2d 254 (2d Cir. 1989).  In Koskotas, the district
5  court granted defendant's motion to dismiss the indictment due to
6  a violation of his Sixth Amendment right to a speedy trial.  888
7  F.2d at 256.  The district court found actual prejudice based on
8  the loss of records that may have had "potentially favorable
9  evidence," reasoning that "'[t]he presumption of innocence
10 requires that [the court] credit the possibility that there was
11 exculpatory evidence contained among the destroyed documents.'"
12 Id. at 256-57.  The Second Circuit reversed, explaining that it
13 was inappropriate for the court "to presume that the lost
14 material included exculpatory evidence favorable to the
15 defendant," especially in light of the investigator's statements
16 that he was not aware of any exculpatory evidence in the
17 destroyed files and the fact that most of the documents in the
18 destroyed files were copies of documents that were not destroyed.
19 Id. at 257.  Relying on Bell, the Second Circuit concluded that
20 the presumption of innocence does not "apply to a motion of this
21 nature."  Id.

22         As a Second Circuit case, Koskotas is not binding upon
23 this court, and in the twenty-five years since it was decided it
24 has not once been cited, let alone followed, by the Ninth
25 Circuit.  Aside from Koskotas, the government has not cited and
26 the court is not aware of any other decision in which a court
27 concluded that the presumption of innocence is irrelevant on a
28 motion to dismiss an indictment due to a violation of the Sixth

Amendment right to a speedy trial. Moreover, in Koskotas, the district court assumed, without any supporting evidence, that the destroyed files might contain exculpatory evidence based exclusively on the presumption of innocence.

Here, however, the court did not simply presume that defendant was innocent and then speculate that the Comcast phone records would contain exculpatory evidence. Instead, defendant put forth non-speculative evidence showing how and why the destroyed Comcast phone records would more than likely contain evidence to support his defense. He showed that Padilla ordered the drugs from the (707)-line and that he did not receive a call from the (707)-line on his cell phone. Of course, defendant could not identify the number Padilla called, and his inability to do so is the heart of his claim of actual prejudice.[3] It was only after defendant put forth this non-speculative evidence that the court presumed defendant was innocent, i.e., presumed that the number Padilla called to order methamphetamine would not be linked to defendant.

Instead of presuming the defendant to be innocent, the government argues that, based on the incriminating evidence it allegedly has against defendant, he must be guilty and the Comcast phone records would only incriminate him further. In assessing actual prejudice, however, a court surely cannot find the defendant guilty based on the evidence against him and then conclude that the destroyed evidence would only incriminate him

---

[3] Defendant cannot be expected to put forth evidence identifying the actual number or person Padilla called. If he could do so, any prejudice from the loss of the Comcast records would be remedied.

10

further.  For the court to do so would preclude a defendant from ever claiming actual prejudice based on destroyed evidence if the government has some incriminating evidence against him.  When a defendant has put forth a non-speculative theory about how destroyed evidence will prevent him from pursuing his defense, it cannot be error for the court to view the unknown contents of the destroyed evidence through the lens of the presumption (or at least an assumption) of innocence.

Moreover, even if the court cannot consider the presumption of innocence, the court would still find that defendant established actual prejudice.  As discussed in the April 11, 2014 Order, defendant successfully showed that the Comcast phone records are highly relevant to his defense and that he did not receive a phone call from the (707)-line on his cell phone.  He also put forth sufficient evidence to show that Padilla had performed repairs to his vehicle, which corroborates his explanation that he was at the repair shop only to discuss those repairs.  Defendant has thus shown through non-speculative evidence that Padilla contacted someone other than defendant to purchase the methamphetamine and that he did not go to the repair shop on August 18 to deliver the methamphetamine, but was simply in the wrong place at the wrong time.  This showing of actual prejudice does not rely on "pure conjecture" or "[g]eneralized assertions of the loss of memory, witnesses, or evidence." United States v. Manning, 56 F.3d 1188, 1194 (9th Cir. 1995).  Defendant's inability to obtain the Comcast phone records and identify the number and individual Padilla called to order the methamphetamine greatly impairs his defense.  When weighed

11

alongside the length of the delay and the government's negligence in causing the delay, defendant has made a sufficient showing of actual prejudice to mandate dismissal of the Indictment. Accordingly, the court will deny the government's motion for reconsideration.

          IT IS THEREFORE ORDERED that the government's motion for reconsideration be, and the same hereby is, DENIED.

Dated:  June 5, 2014

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE